United States District Court
District of Massachusetts

_____
                              )
**WILLIAM E. ORMON,**         )
       **Plaintiff,**      )
                              )
       v.                  )   Civil Action No.
                              )   10-10017-**NMG**
**MICHAEL J. ASTRUE in his**  )
**official capacity as**      )
**COMMISSIONER OF THE SOCIAL**)
**SECURITY ADMINISTRATION,**  )
       **Defendant.**      )
_____)

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff William E. Ormon ("Ormon") seeks judicial review of the denial of his applications for disability benefits by the defendant, Michael Astrue ("the Commissioner"), in his official capacity as Commissioner of the Social Security Administration ("SSA"). Before the Court are plaintiff's motion to remand the decision of the Commissioner and the defendant's motion for an order affirming the decision of the Commissioner.

**I.   Factual Background**

The evidence in the record may be summarized as follows: Ormon is a 42-year-old man with an eleventh-grade education. Before his injury that is the subject of this appeal, he worked as a warehouse worker, forklift operator, cashier and inventory control clerk. On January 14, 2004, Ormon was injured in a motor vehicle accident. Due to severe back and neck pain, Ormon was

-1-

treated by Dr. Victor Conforti, an orthopedic specialist, between March, 2004 and January, 2005. Dr. Conforti restricted Ormon from any kind of continuous lifting, stooping, climbing and bending and ordered physical therapy. In June, 2004, Dr. Conforti noted that Ormon continued to complain of neck pain but that he was doing well in physical therapy, his neck motion was "good" and his reflexes, muscle strength and sensation were normal. In July, 2004, Dr. Conforti discharged Ormon from physical therapy. A cervical MRI that month showed an annular tear at the C6-7 level but showed no disk herniations.

Ormon was also treated at the Saints Memorial Hospital Pain Clinic in Lowell, Massachusetts. In August, 2004, Dr. Roberto Feliz reported that Ormon had limited range of motion of the neck but a straight leg raise test was negative and his sensation was intact. That fall, Ormon received a series of epidural steroid injections to relieve pain and reported some improvement. He was discharged from the pain clinic, however, because he refused to undergo a urine test and disagreed with physicians about the narcotic prescription he was given.

In November, 2004, Ormon was evaluated by Dr. Henry Ty at New England Neurological Associates in Lawrence, Massachusetts. Dr. Ty rated Ormon's motor strength at 5/5 on all extremities and reported a negative straight leg raise test. He diagnosed Ormon with cervical and lumbar spondylosis (cartilage and bone

deterioration) without radiculopathy (herniated disc) but did not recommend surgery.  In December, 2004, Dr. Ty noted an area of tenderness in Ormon's neck but again rated his motor strength at 5/5.  That month, Dr. Conforti reported that Ormon's MRI showed a herniated disc and referred him to physical therapy.

In April, 2005, Ormon consulted with Dr. Bruce Cook, who noted that Ormon was able to walk on heels and toes but that straight leg raises caused back pain.  Dr. Cook opined that Ormon had a spondylolisthesis, or a disc protrusion, but, in August, 2005, expressed the opinion that Ormon could return to work.  Pursuant to Dr. Cook's recommendation, Ormon underwent a laminectomy with interbody fusion and pedicle screw fixation on September 13, 2005.

In January, 2006, Dr. Conforti reported that Ormon suffered from a cervical sprain with possible torn annulus and herniated disc and declared that Ormon was "restricted from any type of continuous lifting, bending, stooping, climbing, kneeling" and "may occasionally carry ten pounds at waist level."  In April, 2006, after some improvement, Dr. Cook noted that Ormon was "having significant amounts of back pain."  In June, 2006, Ormon underwent MRI and x-ray examinations which revealed normal results.

Ormon then was treated by a pain management physician, Dr. Gopala Dwarkanath, on July 6, 2006, who recommended facet block

injections.  On July 20, 2006, Ormon sought a second opinion from Dr. Eugenio Martinez at New England Baptist Hospital.  Dr. Martinez reported that Ormon suffered from chronic lower back pain and suggested an aggressive physical therapy program.  He noted that Ormon's gait was mildly antalgic, he was able to walk on heels and toes and his strength was rated at 5/5.

Ormon then went to the Pain Management Center at Brigham and Woman's Hospital, where he first was treated by Dr. Edgar Ross on August 7, 2006.  Dr. Ross concluded that Ormon suffered from chronic back pain, his motor strength was 5/5 in some areas and 4/5 in others, and his sensation was intact.  He underwent a bone scan which was normal and was prescribed Ultracet to relieve his pain.  On August 29, 2006, Dr. Ross and Dr. Mehul Sekhadia, of the Massachusetts Department of Transitional Assistance, concluded that Ormon could stand up or sit for an hour and could lift or carry under 10 pounds.

On October 6, 2006, Ormon was involved in a minor, rear-end motor vehicle collision and went to the Emergency Room at Lowell General Hospital.  Later that month, Dr. Troy Schmidt of the Brigham and Woman's Hospital evaluated Ormon and found a positive Waddell sign of cervical compression and suggested that a revision of the fusion around Ormon's screws might be beneficial

provided that he quit smoking.[1]  Ormon received a number of lumbar facet joint injections in the fall of 2006.

In January, 2007, Dr. Ross noted that Ormon was limited to walking for one hour, sitting for one hour and lifting ten pounds.  He reported that his pain was an 8/10.  Ormon continued to receive steroid injection treatment at the Pain Management Center.

On March 7, 2007, a state agency medical review was performed by Dr. Malavalli Gopal, who stated that Ormon could perform a full range of light work: lifting 20 pounds occasionally, 10 pounds frequently, standing six hours in an eight-hour work day and sitting the same amount, and unlimited pushing and/or pulling.  He noted that Ormon could engage in occasional climbing, balancing, stooping, kneeling, crouching and crawling.

In December, 2008, an MRI revealed a central shallow protrusion at the L4-5 level.  In February, 2009, however, Dr. Fereshleh Soumekh noted that Ormon was "able to ambulate without difficulty" and an EMG exam revealed normal results.  He stated that Ormon's symptoms and signs were the same as reported in 2006.  In April, 2009, an MRI revealed mild scoliosis.  On April

---

[1] "Waddell signs are physical signs grouped into categories which apparently have been used to help clinicians determine whether a patient is malingering or whether chronic pain complaints may be of psychological origin." Korum v. Astrue, 352 Fed. Appx. 250, 254 (10th Cir. 2009).

27, 2009, however, Dr. Ross expressed the opinion that Ormon was "incapable of any gainful employment as a result of his various disabilities." He reported that Ormon could not lift over five pounds or sit for more than one hour, and could do no bending, stooping or climbing.

Finally, Dr. Amy Vercillo, a vocational expert, testified at Ormon's hearing before the Administrative Law Judge ("ALJ") in April, 2009. After hearing the limitations noted by Dr. Gopal, Dr. Vercillo stated that such a person could perform Ormon's past work as a cashier. She testified, however, that having to lie down two or three times per day would preclude work.

Ormon himself testified that he was able to drive but at times has to pull over and stretch. He stated that he is always in pain. Ormon's typical day includes: driving two hours in the morning to drop his daughter off at school and pick her up, stopping for coffee, making food to eat at home, taking his prescription pain medication, watching television, grocery shopping, changing beds, doing laundry and going to the doctor. He testified, however, that all of this activity causes him tremendous pain and he often becomes numb below the waist, causing him to fall down.

## II. **Procedural History**

In August, 2006, Ormon applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The

Commissioner denied those applications in March, 2007.  Ormon made a timely request for review by a Federal Reviewing Official which was denied.

After a hearing on April 15, 2009, an ALJ applied the "five-step sequential evaluation process," and affirmed the Commissioner's denial of benefits in a decision dated August 3, 2009.[2]  The ALJ found that 1) at step one, Ormon had not engaged in substantial gainful activity since January, 2004, 2) at step two, Ormon's degenerative disc disease impairment was severe and 3) at step three, Ormon's impairments did not meet or medically equal an entry on the Listing of Impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) and 416.925.

Critically, at step four, the ALJ determined that Ormon had the residual functional capacity ("RFC") to perform the requirements of light work but could only occasionally climb, balance, stoop, kneel, crouch or crawl and must avoid concentrated exposure to hazards such as machinery and heights. See 20 C.F.R. §§ 404.1520(e), (f), 416.920(e) and 404.1560 (RFC is assessed in terms of the claimant's ability to perform past relevant work he or she performed within the last 15 years, either as the claimant actually performed it or as it is generally performed in the national economy).  Finally, at step

---

[2] The sequential evaluation process is a series of five "steps" that ALJs follow in order to determine if a claimant is disabled.  See 20 C.F.R. § 414.1520(a)(4).

-7-

five, the ALJ found that Ormon's age, education, prior work experience and RFC indicated that he could perform past work as a cashier.

The ALJ reasoned that, although the claimant's documented impairment could reasonably be expected to cause the alleged symptoms, Ormon's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with his RFC assessment. He found that Ormon's reports of the intensity of his pain and his degree of incapacity were inconsistent with the medical record and doctors' reports. He concluded that Dr. Ross's opinion of April, 2009 was "unpersuasive on this issue as it is conclusory and inconsistent with other significant evidence of record." The ALJ also found Dr. Conforti's July, 2004 opinion that Ormon was unable to return to work unpersuasive because it was inconsistent with other significant evidence in the record. Instead, the ALJ found that the medical evidence was more consistent with the conclusions of Dr. Gopal, the reviewing DSS physician. As such, the ALJ concluded that Ormon could engage in his prior work as a cashier and was, therefore, not totally disabled.

Because the Decision Review Board ("DRB") did not act on the Commissioner's decision within the allotted 90-day period, the ALJ's decision became final. On January 7, 2010, Ormon filed his

complaint in this Court in which he appeals the denial of his applications for DIB and SSI.

## III. Legal Analysis

### A. Standard of Review

To obtain SSI disability benefits under § 1602 of the Social Security Act, 42 U.S.C. § 1381(a) ("the Act"), an individual must demonstrate that he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

The Act gives federal district courts the power to affirm, modify or reverse the ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). The Act provides, however, that the findings of the Commissioner are conclusive so long as 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See id.; Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those two requirements are satisfied, then the Court must uphold the Commissioner's decision, even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

In reviewing the record for substantial evidence, the Court is mindful that issues of credibility, resolution of conflicts in

the evidence and determination of the ultimate question of disability are reserved for the Commissioner. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). The Court must uphold the Secretary's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Id. The quantum of proof necessary to sustain the Commissioner's decision is less than a preponderance of the evidence. Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003).

### B.  Application

#### 1.  Pre-Surgical Period and Res Judicata

Ormon claims that the ALJ's decision was not supported by substantial evidence because the ALJ failed to analyze whether he was disabled for the period between the January, 2004 accident and his surgery in September, 2005. Ormon contends that the ALJ never explained his finding that Ormon's condition was "inconsistent with the clinical data or record" with respect to the pre-surgery period.

The Commissioner responds that Ormon's symptoms between January, 2004 and December, 2005 were irrelevant to the ALJ's decision and barred pursuant to the doctrine of res judicata by Ormon's previous applications. Indeed, Ormon previously applied for benefits in December, 2005 and was denied in February, 2006. He did not appeal those final decisions.

Administrative res judicata applies if the SSA has made a previous determination which 1) relates to the same facts and issues and 2) has become final by either administrative or judicial action. 20 C.F.R. § 404.957(c)(1). If the ALJ reopens the previous determination for reconsideration, however, then res judicata does not apply. See Purter v. Heckler, 771 F.2d 687, 696 (3rd Cir. 1985). In order to find a de facto reopening by the ALJ, the Court must find both (1) reconsideration of the claims on the merits and (2) good cause for reopening. Kaszer v. Massanari, 40 Fed. Appx. 686 (3rd Cir. 2002); Purter, 771 F.2d at 696. "Good cause" includes a showing that 1) there is new evidence, 2) a clerical error was made in the computation of benefits or 3) "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a).

In this case, the Court finds that the ALJ did not reopen the December, 2005 applications because he did not reconsider Ormon's claims for disability benefits prior to December, 2005. Although the ALJ mentioned reports from before December, 2005, he did not use those reports as the basis for his decision. Instead, the ALJ primarily relied on the vocational expert's testimony and the report of Dr. Gopal from March, 2007. In fact, Ormon himself states that the ALJ ignored that period and focused on whether Ormon was currently disabled. Thus, the December,

2005 applications were not reopened and res judicata bars reconsideration of those applications by this Court. In any event, even if this Court were to consider the pre-surgical period, it would still conclude that the ALJ's finding that Ormon is not currently entitled to SSI or DIB is supported by substantial evidence.

**2.    Reviewing the Record for Substantial Evidence**

Ormon claims that the ALJ failed properly to assess the opinion of Dr. Edgar Ross, Ormon's pain management physician, in April, 2007, that Ormon was unable to return to work. The ALJ found Dr. Ross's opinion to be unpersuasive because it was conclusory and inconsistent with the medical record and there was no objective data supporting it. Ormon argues that pain cannot necessarily be proven by objective data and two of his treating physicians, Dr. Dwarkanath and Dr. Martinez, reported Ormon's pain when performing certain movements.

The Court finds that the ALJ's decision is supported by substantial evidence for the following reasons: First, the ALJ properly evaluated Dr. Ross's opinion. A treating physician's opinion is only entitled to controlling weight when it is 1) medically well-supported and 2) not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If the ALJ does not give such an opinion controlling weight, he or she must consider

(1) the physician's length of treatment of the claimant,
(2) the physician's frequency of examination,
(3) the nature and extent of the treatment relationship,
(4) the support of the physician's opinion afforded by the medical evidence of record,
(5) the consistency of the opinion with the record as a whole; and
(6) the specialization of the treating physician.

Id. After consideration of those factors, the ALJ must explain the reasons for the weight he or she gives to a treating physician's opinion. Id.

The Court concludes that the ALJ properly explained why he discredited Dr. Ross's opinion of April, 2007. The record, which includes many of Dr. Ross's own treatment notes, reveals that Ormon's gait was consistently stable and his motor strength and sensation were normal. The straight leg raise test was consistently negative, no muscle atrophy was noted and the MRIs revealed only minimal abnormalities. After considering the record as a whole, the Court finds that the ALJ's opinion is adequately supported by the record.

Ormon asserts that the ALJ is obligated to "make every reasonable effort to recontact [treating sources] for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear." SSR 96-5p, 61 F.R. 34471, 34474 (July 2, 1996). The Court concludes, however, that the abundance of treatment notes by Dr. Ross in the record make the reasons for his opinion sufficiently

clear and, therefore, the ALJ did not have an obligation to contact Dr. Ross personally for an explanation.

Second, the ALJ's assessment is properly supported by the expert opinions of Dr. Gopal, the reviewing expert, and Dr. Vercillo, the vocational expert.  Where reviewing experts provide an opinion that is contrary to that of a treating physician, the ALJ may assign greater weight to the opinion of a reviewing physician so long as he has adequate basis for doing so.  See Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991).  The ALJ's assessment is consistent with the conclusions of Dr. Gopal and Dr. Vercillo that Ormon was able to perform the requirements of light work, except that he could only occasionally climb, balance, stoop, kneel, crouch or crawl, and he had to avoid concentrated exposure to hazards such as machinery.  Although it is unknown exactly which documents Dr. Gopal reviewed, his report indicates that he reviewed a substantial portion of Ormon's medical history.  For instance, he refers to the Brigham and Women's Hospital records, Dr. Ross's treatments notes, Ormon's second accident, the positive straight leg raise test results and notes indicating a decreased range of motion of his back and no motor or sensory deficits.

Ormon also argues that the ALJ improperly assessed his credibility with respect to the intensity of his pain and his degree of incapacity.  The Court finds that the ALJ properly

discounted Ormon's credibility after a review of all of the relevant evidence.  Ormon testified that he engages in daily activities such as caring for his daughter, driving her to and from school, doing laundry, washing dishes, taking out the trash and going grocery shopping.  Furthermore, Dr. Martinez noted that the presence of medical/legal involvement (i.e., a pending SSI or DIB application) could be considered a negative prognostic indicator.  Thus, the ALJ had a reasonable basis for discrediting Ormon's testimony about the intensity of his pain and degree of his incapacity and "a reasonable mind, reviewing the evidence in the record as a whole" could find that the ALJ's conclusion was adequately supported by the record.  See Rodriguez, 647 F.2d at 222.

### ORDER

For the foregoing reasons, the plaintiff's motion to reverse or remand the decision of the Commissioner (Docket No. 14) is **DENIED** and the defendant's motion for an order affirming the decision of the Commissioner (Docket No. 17) is **ALLOWED.**
**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 14, 2011